## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

DEBORAH D. VOVCHIK,      )
                                  )
        PLAINTIFF,      )
                                  )
VS.                         )     CASE NO. 10-CV-73-FHM
                                  )
MICHAEL J. ASTRUE,      )
Commissioner of the      )
Social Security Administration,      )
                                  )
        DEFENDANT.      )

## OPINION AND ORDER

Plaintiff, Deborah D. Vovchik, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's October 24, 2006 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held February 20, 2009. By decision dated May 18, 2009, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on December 9, 2009. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 47 years old at the time of the hearing. [R. 22]. She claims to have been unable to work since March 15, 2006, due to chronic back pain, arthritis, carpel tunnel syndrome, hearing loss and depression. [R. 22].

The ALJ determined that Plaintiff has severe impairments consisting of carpal tunnel syndrome and degenerative disc disease status post diskectomy and fusion. [R. 12]. Despite these impairments, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform sedentary work with avoidance of constant use of the hands for repetitive tasks. [R.14, 16]. He determined that Plaintiff's RFC precluded her past relevant work (PRW) as a housecleaner. [R. 16]. Based upon the testimony of a Vocational Expert (VE), the ALJ found there are other jobs that exist in significant numbers in the economy that Plaintiff could perform and that Plaintiff is not disabled as defined by the Social Security Act. [R. 17-18]. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

In Plaintiff's first allegation of error, she asserts the ALJ erred in failing to apply the proper legal standard in assessing Plaintiff's credibility. The Court agrees and finds this case must be reversed and remanded to the Commissioner on this basis.

<u>Medical History</u>

Plaintiff has complained of back pain as far back as March 4, 2004. [R. 391]. Her primary care physician, Daniel Martin, D.O., ordered an MRI of Plaintiff's lumbar spine on April 4, 2005, and referred Plaintiff to a neurosurgeon, Ronald E. Woosley, M.D. [R. 169-170, 224, 323-325, 477-478]. After reviewing the MRI, Dr. Woosley reported that Plaintiff had a mass lesion at L4-5 to the left dorsally and degenerative disc disease at L5/S1 with a focal signal in the posterior anulus suggesting radial tear. [R. 167-168. 319-320]. He recommended conservative care with medication and weight loss. *Id.* During the two ensuing years, from May 18, 2005 to May 25, 2007, Plaintiff underwent treatment in the form of epidural steroid injections, physical therapy and medication. [R. 189-195, 171-203, 221, 241-255, 284-285, 449-451, 588-593].[2] Dr. Martin sent Plaintiff to an orthopedist, Steven C. Anagnost, M.D., who was assisted by Jodie L. Popp, a physician's assistant. [R. 290-291, 457-458]. They monitored Plaintiff's progress and continued to recommend conservative treatment until January 30, 2007, when Plaintiff was seen after having fallen on the ice and complained of increased pain in her lower back and legs bilaterally. [R. 274-275]. Plaintiff was sent for a lumbar discogram, an injection technique used to evaluate patients with back pain who have not responded

_____

[2] Many of the medical reports and treatment notes are duplicated in the record, some several times. For purposes of efficiency, the Court cites to pages in the record containing only the first appearance of that document.

to extensive conservative care regimens.[3]  Bahdresh L. Bhakta, M.D., reviewed Plaintiff's prior MRI, Dr. Anagnost's notes and the epidural injection notes and conducted the discogram on March 7, 2007. [R. 247-255].  After review of the discogram and the CT studies that were conducted at Southcrest Hospital, Dr. Anagnost wrote Dr. Martin a letter in which he recommended surgery "at [Plaintiff's] earliest convenience." [R. 241-242].

The May 25, 2007 surgical report reflects intraoperative findings of: "1. Marked instability at L5-S1; 2. Significant foraminal stenosis secondary to collapse and instability at L5-S1; and 3. Moderate herniated nucleus pulposus at L5-S1." [R. 409-412].  Interbody stabilization with pedicle screw instrumentation was done. *Id.*  Plaintiff was maintained on pain medication, rest and a "turtle back brace"  and Dr. Anagnost reported "marked improvement of back pain and leg pain" one month after the surgery. [R. 561].  A TENS (transcutaneous electrical nerve stimulation) unit was added in July 2007. [R. 562].  Plaintiff's hard brace was replaced with a soft brace in August, 2007. [R. 563]. On August 23, 2007, Plaintiff reported improvement of her back pain but continued pain over the L5-S1 hardware. *Id.*  She was to follow up in six weeks. *Id.*

The only record from Dr. Anagnost and PA Lyle after that report is dated October 10, 2007, and indicates Plaintiff tested positive for carpal tunnel syndrome. [R. 540-541].  She was given night splints to use and was told an EMG (electromyography) would be ordered followed by corticosteroid injections into the carpal tunnel. *Id.*

---

[3] See medical encyclopedia online at: http://www.radiologyinfo.org/en/info/cfm?pg+discography (last reviewed Sept. 1, 2010).

Plaintiff appeared at the Indian Hospital for follow-up appointments regarding depression and back pain on October 17, 2007 and April 23, 2008. [R. 623, 679, 682]. She underwent a laparoscopic cholecystectomy (surgical removal of the gallbladder) and repair of umbilical hernia on June 6, 2008. [R. 638-669, 684].

The Social Security Administration arranged a consultative examination by Tre' Landrum, D.O., which was done February 6, 2007. [R. 198-203]. Dr. Landrum reported Plaintiff's medical treatment history and her subjective complaints and noted that Plaintiff's problems became worse when she fell on the ice a few weeks before the examination. Physical examination revealed no hearing deficits, adequate peripheral pulses. Plaintiff moved all extremities well and was able to pick up and manipulate paperclips without difficulty. Dr. Landrum reported Plaintiff moved about the room fairly easily, that she had full range of motion of the spine, but that pain was noted during the examination and that she was unable to perform the toe and heel walking test due to balance and pain bilaterally. He said Plaintiff had a "mostly stable" gait without the use of an assistive device though she did have a cane to help with balance and prevent falls. Dr. Landrum's charts indicated range of motion within normal limits, positive for scoliosis, tenderness and pain and weak toe walking. He assessed chronic back pain and depression. *Id.*

The agency's medical expert who reviewed the record but did not examine Plaintiff prepared an RFC for "[b]efore 5-25-07 and after 5-08" on September 11, 2007. [R. 530-537]. Plaintiff was assessed as able to occasionally lift and or carry 10 pounds; frequently lift and/or carry five to nine pounds; stand and/or walk 2 hours total per 8-

hour day; sit "about" 6 hours in an 8-hour workday; and unlimited push and/or pull abilities. *Id.*

A PRT by Janice B. Smith, Ph.D., dated February 28, 2007, indicates no functional limitations were imposed by Plaintiff's depression and notes that there was no evidence in the record of a diagnosis of depression or a prescription for Zoloft. [R. 205-217]. Sally Varghese, M.D., stated on a case analysis form on January 14, 2008: "I have reviewed all of the medical evidence in file and the assessment of 02/29/07 is affirmed as written." [R. 635].

<u>The ALJ's Decision</u>

After setting forth his assessment of Plaintiff's RFC [R. 14], the ALJ summarized Plaintiff's testimony and said that he found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." [R. 14-15]. He then summarized the medical evidence, noting in particular the RFC conclusions by the agency physicians. [R. 15-16]. He acknowledged that the agency physicians were non-examining and that their opinions do not deserve as much weight as those of examining or treating physicians but said: "those opinions do deserve some weight, particularly in a case like this in which **there exist a number of other reasons to reach similar conclusions (as explained throughout the decision)**." [R. 16 (emphasis added)].

The ALJ identified two factors that weigh against Plaintiff's described daily activities as strong evidence in her favor: "First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities were truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, **in view of the relatively weak medical evidence and other factors discussed in this decision.**" [R. 16 (emphasis added)]. He said: "**Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.** *Id.* (emphasis added).

The ALJ then noted Plaintiff's sporadic work history which, he said: "does not lend great support to her statement about her inability to work because of her pain and other subjective complaints." [R. 16].

The ALJ said he did not discount all Plaintiff's complaints and acknowledged her impairments would undoubtedly cause some pain. [R. 16]. He pointed out that Plaintiff's treating physicians did not place any functional restrictions on her activities and that Plaintiff's restricted daily activities seem self-imposed, saying: "There is no evidence that any of the claimant's treating physicians have told her to do nothing all day. **Given the objective medical evidence in the record, the [ALJ] finds that the claimant's [RFC] is reasonable**, and that the claimant could function with those limitations without experiencing significant exacerbation of her symptoms. Three medical experts with the state agency also felt that the claimant could perform at least sedentary work activity." [R. 16 (emphasis added)].

<u>Discussion</u>

The ALJ never identified the "other reasons to reach similar conclusions" as those assessed by the non-examining physicians. Nor did he reveal the "other factors" that outweighed Plaintiff's reported limited daily activities. And, though he referred several times to "other factors discussed in this decision" he never actually "discussed' or explained what factors led him to conclude that Plaintiff's allegations of severe pain were not credible, other than her work history, which Plaintiff explained was sporadic during her child-bearing years.

Contrary to the ALJ's declaration, the medical evidence in the record is not "relatively weak." Throughout the medical record which spans four years, Plaintiff's complaints of extreme pain, numbness, tingling, weakness and aggravation of symptoms by long periods of sitting and standing were consistent and well documented. The record reflects that Plaintiff complied with the treatment recommendations she received prior to and after the surgery in attempting to alleviate her pain and other symptoms. And, though it is true that none of her treating doctors or surgeons stated outright that Plaintiff could not engage in any work activities, there is no suggestion in the record that they disbelieved her subjective complaints or that they thought she was malingering or exaggerating her symptoms. In fact, Plaintiff's general care practitioner signed her handicapped parking placard application on February 2, 2006, and stated that Plaintiff could not walk 200 feet without stopping to rest and that she is severely limited in ability to walk. [R. 302].

Credibility determinations "must be grounded in the evidence and articulated in the determination or decision." Soc.Sec.Ruling (SSR) 96-7p, 1996 WL 374186, at *4;

*see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (credibility determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." (internal quotation marks omitted).). In this case, the ALJ's credibility determination consists of boilerplate language and contains no analysis linking the determination to the evidence. Furthermore, the ALJ failed to discuss the various factors suggested by case law and SSR 96-7p, 1996 WL 374186 (July 2, 1996) (factors to be considered by the ALJ in assessing credibility include extensiveness of attempts, medical or non-medical, to obtain relief and frequency of medical contacts). The ALJ did not demonstrate that he had considered Plaintiff's persistent attempts to find relief from her pain, her frequent contact with physicians and her willingness to try various treatments for her pain including, ultimately, surgery to correct a condition that was described with such terms as "marked instability" and "significant foraminal stenosis secondary to collapse." [R. 409-412]. This failure was error. *See Hardman v. Barnhart*, 362 F.3d 676, 680 (10th Cir. 2004). Because the ALJ did not explain and support with substantial evidence which of Plaintiff's testimony he did not believe and why, this case must be remanded for reconsideration. *See Angel v. Barnhart*, 329 F.3d 1208, 1213 (10th Cir. 2003) (in the absence of a thorough analysis and specific findings in the decision, court cannot determine that substantial evidence supports the determination of the ALJ).

## Conclusion

The ALJ failed to closely and affirmatively link his credibility findings to evidence in the record and did not demonstrate that he properly weighed Plaintiff's allegations of disabling pain and other symptoms against the medical evidence. Therefore, the

Court cannot say that the record contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for reconsideration.

Dated this 30th day of March, 2011.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE